IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re the Application of

Omnilife de Mexico S.A. de C.V., Applicant

PURSUANT TO 28 U.S.C. § 1782 FOR
DISCOVERY ASSISTANCE

CASE NO. 17 MISC 182

### DECLARATION OF JAVIER COELLO ZUARTH



RECEIVED JUN 01 2017 U.S.D.C. S.D.N.Y. CASHIERS

# DECLARATION OF JAVIER COELLO ZUARTH

1. My name is Javier Coello Zuarth. I am a licensed Mexican attorney graduated from the University Anáhuac del Sur, and I focus my professional practice on criminal law, an area in which I have earned several advanced education diplomas. As part of my experience in this field, I have advised and represented more than 600 clients in criminal law-related matters for more than 17 years.

2. I currently work at the law firm of Coello Trejo & Associates, where I advise both crime victims and those charged with crimes on various aspects associated with criminal proceedings (among other matters). One of my current clients is Omnilife de Mexico S.A. de C.V. ("Omnilife").

3. I submit this statement to support Omnilife's Application — under the law known as "28 US Code §1782: Assistance to foreign and international tribunals and to litigants before such tribunals" — to obtain relevant evidence for two criminal proceedings and two criminal investigations being conducted in Mexico by the Jalisco State public prosecutor's office as the result of the complaints filed by Omnilife against Angélica Fuentes Téllez ("Fuentes"), who presented herself as a manager of Omnilife until April 2015. I have personal knowledge of the facts set forth in this declaration.

4. Specifically, in section **(I)** of this statement, I explain that Omnilife filed four complaints against Fuentes at the Jalisco State public prosecutor's office, explaining that Fuentes sold various artworks owned by Ominlife to herself and to third parties for a minuscule price compared to their market value of several million dollars. As a result of these complaints, the public prosecutor's office initiated four preliminary investigations against Fuentes. In two of those four investigations, the prosecutors have already indicted Fuentes in a Mexican court in the State of Jalisco; in other words, two formal criminal proceedings are already underway against Fuentes. In the other two investigations, the prosecutors have not yet indicted Fuentes, but the investigations are still open.

5. In section **(II)**, I explain that, as the complainant, Omnilife has the right — granted by the Mexican Constitution — to participate in those two criminal investigations and two criminal proceedings, among others, by submitting additional evidence (such as the

evidence that Omnilife would obtain if the US Court grants its Application under §1782). I also explain that the prosecutor's office conducting those investigations and the judges presiding over those proceedings are required to receive and examine this evidence submitted by Omnilife.

6. Lastly, in section **(III)**, I explain that neither the prosecutor's office nor the criminal courts can compel the production of evidence outside Mexico, including the evidence Omnilife seeks through this §1782 application.

## I. The Two Criminal Proceedings And Two Criminal Investigations Into Fuentes' Fraud Regarding Omnilife's Artworks

7. Omnilife has filed complaints with Mexican state and federal prosecutor's offices alleging various dealings by Fuentes that could constitute criminal conduct, and has asked the prosecutor's offices to investigate those dealings and then determine whether a crime was committed.

8. Among others, Omnilife has filed four complaints explaining that Fuentes sold works of art belonging to Omnilife, appraised at millions of dollars, to third parties and in some cases to herself at prices far below their actual value, possibly in order to then pocket the difference. In other words, the investigation is aimed at determining whether Fuentes defrauded Omnilife by misappropriating the price difference of these sold artworks.

9. After Omnilife's four complaints, the following events occurred:

   i. The Jalisco public prosecutor's office launched four preliminary investigations into the facts cited in the complaints.[1]

   ii. Two of those four investigations are still ongoing.

   iii. The other two investigations have already advanced to the stage of criminal proceedings. In other words, in these two investigations, the prosecution has formally indicated Fuentes in a court of law, having concluded that there is

---

[1] Of those four investigations, one was subsequently divided into two investigations; therefore, it may be said that there are now five investigations (rather than four).

        sufficient evidence that (a) a crime was committed and that (b) Fuentes committed that crime. When the prosecutors in charge of these two investigations indicted Fuentes, the courts respectively initiated two criminal proceedings against Fuentes.

    iv.    The judges presiding over these two criminal proceedings have issued arrest warrants against Fuentes, having found that there is sufficient evidence to conclude that Fuentes is "probably liable" for the crime of which she is being accused.

10. Next, I will briefly explain the relevant facts regarding those two criminal proceedings and two investigations.

    **A.**    **First Criminal Proceeding**

11. On May 14, 2015, Omnilife filed a complaint (attached hereto as **Exhibit A**) with the Jalisco public prosecutor's office, explaining that while presenting herself as Omnilife manager, Fuentes sold 21 works of art owned by Omnilife to the Phillips de Pury & Company gallery (located in New York) at prices far below their actual value and the price Omnilife had paid for them. Omnilife explained that it paid MX$17,172,098.49 for these 21 artworks and that Fuentes sold them for MX$188,566.95 — i.e., for less than 2% of their value — causing Omnilife a loss of at least MX$16,983,531.54.[2]

12. On May 18, 2015, as a result of this complaint, the Jalisco public prosecutor's office launched a preliminary investigation — preliminary investigation No. 3085/2015 — to determine whether Fuentes had committed a crime.[3] The document through which the public prosecutor's office initiated this preliminary investigation is attached hereto as **Exhibit B**.

---

[2] At the May 26, 2017 conversion rate, this equals US $917,369.87.

[3] The public prosecutor's office subsequently divided this investigation into two; therefore, it may be said that there are now five investigations (rather than four). On a separate note, while this investigation was originally labeled as number 3085, the prosecutors subsequently assigned a new case file number to this investigation as well as to the others.

3

13. On a subsequent date, the prosecutor in charge of this investigation brought the investigation before a judge, i.e., formally indicted Fuentes in court, and this judge is now presiding over the respective criminal proceeding against Fuentes.

### B.   Second Criminal Proceeding

14. On May 14, 2015, Omnilife filed this complaint (attached hereto as **Exhibit C**) with the Jalisco public prosecutor's office, explaining that while presenting herself as Omnilife manager, Fuentes sold two works of art owned by Omnilife to herself at prices far below their actual value and the price Omnilife had paid for them. Omnilife explained that it paid MX$11,491,367.50 for these two artworks and that Fuentes sold them to herself for MX$905,172.42 — i.e., for less than 8% of their value — causing Omnilife a loss of at least MX$10,586,195.08.[4]

15. On May 18, 2015, as a result of this complaint, the Jalisco public prosecutor's office launched a preliminary investigation — preliminary investigation No. 3086/2015 — to determine whether Fuentes had committed a crime.

16. On a subsequent date, the prosecutor in charge of this investigation brought the investigation before a judge, i.e., formally indicted Fuentes in court, and this judge is now presiding over the respective criminal proceeding against Fuentes.

### C.   First Criminal Investigation That Is Not Yet A Criminal Proceeding

17. On May 14, 2015, Omnilife filed this complaint (attached hereto as **Exhibit D**) with the Jalisco public prosecutor's office, explaining that while presenting herself as Omnilife manager, Fuentes sold 19 works of art owned by Omnilife to herself at prices far below their actual value and the price Omnilife had paid for them. Omnilife explained that it paid MX$3,379,611.69 for these 19 artworks and that Fuentes sold them to herself for

---

[4] At the May 26, 2017 conversion rate, this equals US $571,816.08.

MX$286,900 — i.e., for less than 9% of their value —causing Omnilife a loss of at least MX$3,092,711.69.[5]

18. On May 18, 2015, as a result of this complaint, the Jalisco public prosecutor's office launched a preliminary investigation — preliminary investigation No. 3087/2015 — to determine whether Fuentes had committed a crime.

19. This investigation is still ongoing. The prosecutor in charge of this investigation has not yet formally indicted Fuentes in court, which means that the investigation is not yet a criminal proceeding.

   D.   **Second Criminal Investigation That Is Not Yet A Criminal Proceeding**

20. On May 20, 2015, Omnilife filed this complaint (attached hereto as **Exhibit E**) with the Jalisco public prosecutor's office, explaining that while presenting herself as Omnilife manager, Fuentes sold to herself a work of art entitled AEREI 1984, owned by Omnilife, at a price far below its actual value and the price Omnilife had paid for it. Omnilife explained that it paid MX$272,259.00 for this work of art and that Fuentes sold it to herself for MX$129,310.35 — i.e., for less than 50% of its value — causing Omnilife a loss of at least MX$142,948.65.[6]

21. On May 22, 2015, as a result of this complaint, the Jalisco public prosecutor's office launched a preliminary investigation — preliminary investigation No. 3306/2015 — to determine whether Fuentes had committed a crime.

22. On a subsequent date, Omnilife submitted a formal filing to the prosecutor, explaining that as part of its investigation into Fuentes' conduct, Omnilife had discovered that Fuentes had sold the artworks owned by Omnilife to various galleries worldwide, including the following galleries located in New York: Gagosian Gallery, Hauser & Wirth Gallery, and Spencer Brownstone Gallery.[7] In that filing, Omnilife also explained

---

[5]  At the May 26, 2017 conversion rate, this equals US$167,053.63.

[6]  At the May 26, 2017 conversion rate, this equals US$7,721.41.

[7]  This filing is attached hereto as **Exhibit F**.

to the prosecutor that Fuentes had performed some of these transactions through a broker named David Cohen. Omnilife asked the prosecutor to compile the necessary information on these galleries and this broker in the course of the investigation.

23. This investigation is still ongoing. The prosecutor in charge of this investigation has not yet formally indicted Fuentes in a court of law, which means that the investigation is not yet a criminal proceeding.

## II. Omnilife Has The Right To Submit Any Relevant Evidence, Including The Evidence It Obtains Under The §1782 Application, In The Two Criminal Proceedings And The Two Investigations

24. Under Mexican law, Omnilife has the right to submit any evidence it obtains through that Application in the two investigations and the two criminal proceedings, provided such evidence is relevant to those investigations and proceedings.[8] The prosecutors in charge of those investigations and the judges presiding over those proceedings *are required* to accept and examine the evidence submitted by Omnilife, and have no discretion to deny Omnilife the right to have its evidence accepted.[9]

25. Specifically, article 20 of the Mexican Constitution entitles Omnilife, and any victim of a crime that reports it, to "have all information or items of evidence it provides accepted both in the [preliminary] investigation and in the [criminal] trial" that follows the preliminary investigation.[10] The Mexican Supreme Court, the highest court in the land, has ruled that Mexican authorities are required to respect this right. This means that the

---

[8] In fact, when it filed its four complaints, Omnilife reserved the right to amend them and submit any additional evidence relating to the facts cited in the complaint. *See, for example*, Coello, Ex. A (p. 6), where Omnilife reserves the right to amend the complaint as well as to exhibit other evidence.

[9] In fact, when launching the four investigations, the prosecutor's office ordered that all necessary inquiries be made and all necessary documents be received over the course of the preliminary investigation. *See, for example*, Coello Ex. B (p. 2), where the district attorney resolves to initiate the respective Preliminary Investigation and conduct as many inquiries as needed to establish the *corpus delicti* and the probable criminal liability of the perpetrator.

[10] In addition, this article entitles Omnilife to "participate in the trial and file motions and appeals as provided by law" and to be compensated for any damage caused by the crime.

6

public prosecutor's office and the courts are required to accept the evidence provided by the complainant, in this case Omnilife, having no discretion in this regard.[11]

26. Similarly, Article 115 of the Code of Criminal Procedure for Jalisco State (the Mexican state where the two investigations and two criminal proceedings against Fuentes are underway) also gives Omnilife, and any victim of a crime that reports it, the right "to have all information or items of evidence it provides accepted both in the preliminary investigation and in the trial, and for the relevant inquiries to be conducted."

27. Lastly, in the criminal proceedings, Omnilife has the right to be compensated for damages, and it is quite possible that Omnilife will seek such compensation.[12]

### III. The Public Prosecutor's Office And The Courts Have No Way Of Compelling The Production Of Evidence Outside Mexico

28. Under Mexican law, during preliminary investigations and criminal proceedings, the Jalisco public prosecutor's office and the courts of Jalisco may summon any witness (or order the production of any document) if relevant for ascertaining the facts. The public prosecutor's office and the courts may even compel the witness to appear or the documents to be produced, under penalty of enforcement. *See, for example,* Article 55 of the Jalisco State Code of Criminal Procedure.

29. However, these powers are territorial in nature and limited to Mexico. The public prosecutor's office and courts cannot compel testimony or the production of documentary evidence outside Mexico and require the assistance of foreign authorities to obtain the production of this evidence.

---

[11]  *See, for example,* Supreme Court judgment 1 CXII/2011 of July 2011; *see also* Direct *Amparo* Judgment 569/2002 of the Ninth Three-Judge Criminal Court of the First Circuit.

[12]  As I explained, under article 20 of the Mexican Constitution, Omnilife has the right to obtain compensation for damages caused by the crime. *See* Mexican Constitution, Article 20 (C) ("Of the rights of the victim or injured party"), V ("To be compensated for the damage. In the appropriate cases, the Ministerio Público [Mexico's Department of Justice] shall be required to seek compensation for the damage, without detriment to the victim or injured party's right to do so directly, and the court, having rendered a guilty verdict, may not absolve the convicted party from providing such compensation").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 30, 2017.


Javier Coello Zuarth
Mexico City, Mexico.

8

Spanish Original

## DECLARACIÓN DE JAVIER COELLO ZUARTH

1. Mi nombre es Javier Coello Zuarth. Soy abogado mexicano egresado de la Universidad Anáhuac Del Sur, y enfoco mi ejercicio profesional en derecho penal, materia en la cual he obtenido varios diplomas en educación avanzada. Como parte de mi experiencia en esta materia, he asesorado y representado a más de 600 clientes en temas relacionados con derecho penal por más de 17 años.

2. Actualmente trabajo en el despacho Coello Trejo & Asociados, donde asesoro y represento tanto víctimas de delitos, como denunciados por delitos, en distintos aspectos asociados a los procedimientos penales (entre otros temas). Uno de mis clientes actuales es Omnilife de México S.A. de C.V. ("Omnilife").

3. Presento esta declaración para apoyar la Aplicación de Omnilife—bajo la ley conocida como "28 US Code §1782: Assistance to foreign and international tribunals and to litigants before such tribunals"—para obtener evidencia relevante a dos procedimientos y dos investigaciones penales que, a raíz de las denuncias presentadas por Omnilife, se adelantan en el Estado de Jalisco, México, contra Angélica Fuentes Téllez ("Fuentes"), quien se presentaba como administradora de Omnilife hasta abril de 2015. Tengo conocimiento personal de los hechos presentados en esta declaración. 

4. En concreto, en la sección **(I)** de esta declaración, explico que Omnilife presentó cuatro denuncias en la fiscalía de Jalisco, México, contra Fuentes, explicando que Fuentes se vendió a sí misma, y a terceros, varias obras de arte propiedad de Omnilife por un precio ínfimo comparado a su valor de mercado de varios millones de dólares. A raíz de estas denuncias, la Fiscalía integró cuatro investigaciones previas contra Fuentes. En dos de esas cuatro investigaciones, los fiscales ya acusaron a Fuentes ante un Juez Mexicano en el Estado de Jalisco, es decir, ya hay dos procedimientos penales formales contra Fuentes. Y en las otras dos investigaciones, los fiscales aún no han acusado a Fuentes pero las investigaciones siguen abiertas.

5. En la sección **(II)**, explico que, como denunciante, Omnilife tiene el derecho—otorgado por la constitución mexicana—de participar en las dos investigaciones y en los dos procedimientos penales, entre otras, aportando pruebas adicionales (tales como las

pruebas que Omnilife obtendría si la Corte Estadounidense le concede su Aplicación bajo la §1782). También, explico que la fiscalía y los jueces a cargo de esas investigaciones y procedimientos tienen la obligación de recibir y analizar esas pruebas aportadas por Omnilife.

6. Finalmente, en la sección **(III)**, explico que ni la fiscalía ni los jueces penales tienen la forma de constreñir que se produzcan pruebas fuera de México, incluyendo las pruebas que Omnilife busca con esta aplicación §1782.

## I. Los dos procedimientos penales y las dos investigaciones sobre el fraude de Fuentes con respecto a las obras de arte de Omnilife

7. Omnilife ha denunciado ante las fiscalías mexicanas, estatales y federales, varias conductas de Fuentes que podrían constituir delito, y ha pedido a las fiscalías que investiguen esos hechos y luego determinen si hubo algún delito.

8. Entre otras, Omnilife presentó cuatro denuncias explicando que Fuentes vendió a terceras partes, y en algunos casos a sí misma, obras de arte de propiedad de Omnilife, avaluadas en millones de dólares, a precios muy descontados de su valor real para, posiblemente, luego quedarse con la diferencia. Es decir, se investiga si Fuentes defraudó a Omnilife al apropiarse de la diferencia en precio que tenían las obras de arte vendidas.



9. Luego de que Omnilife presentó esas cuatro denuncias ocurrieron los siguientes eventos:

   i. La fiscalía de Jalisco inició cuatro investigaciones previas sobre los hechos denunciados.[1]

   ii. Dos de esas cuatro investigaciones siguen en curso.

   iii. Las otras dos de esas cuatro investigaciones ya avanzaron a procedimiento penal. Es decir, en esas dos investigaciones, los fiscales acusaron formalmente a Fuentes ante un juez, porque concluyeron que existen suficientes pruebas que (a) se cometió un delito; y que (b) Fuentes cometió el delito. Cuando los fiscales en

---

[1] Una de esas cuatro investigaciones se dividió luego en dos investigaciones por lo cual podría decirse que hay cinco (y no cuatro) investigaciones.

2

esas dos investigaciones acusaron a Fuentes, los jueces abrieron dos procedimientos penales respectivos contra Fuentes.

iv. Los jueces a cargo de esos dos procedimientos penales han dictado órdenes de aprehensión contra Fuentes porque esos jueces concluyeron que existen suficientes pruebas para concluir que Fuentes es "probablemente responsable" del delito que se le acusa.

10. Paso a explicar brevemente los hechos relevantes de esos dos procedimientos penales y de esas dos investigaciones.

A. **Primer Procedimiento Penal**

11. El 14 de mayo de 2015, Omnilife presentó una denuncia (adjunta aquí como **Exhibit A**) ante la fiscalía de Jalisco, explicando que, mientras se presentaba como administradora de Omnilife, Fuentes vendió 21 obras de arte, propiedad de Omnilife, a la galería Phillips de Pury & Company (ubicada en Nueva York), a precios muy descontados de su valor real y del valor que Omnilife pagó por ellas. Omnilife ha explicado que por esas 21 obras de arte pagó $17,172,098.49 (pesos mexicanos) y que Angélica Fuentes las vendió a $188,566.95 (pesos mexicanos)—es decir, a menos del 2% de su valor—causando un perjuicio a Omnilife de por lo menos $16,983,531.54 (pesos mexicanos).[2]



12. A raíz de esta denuncia, el 18 de mayo de 2015, la fiscalía de Jalisco inició una investigación previa sobre esos hechos—la investigación previa No. 3085/2015—para luego determinar si Fuentes cometió algún delito.[3] Como **Exhibit B** a esta declaración adjunto el documento por el que la fiscalía inició esta investigación previa.

13. Posteriormente, el fiscal a cargo de esta investigación la consignó ante un juez, es decir acusó formalmente a Fuentes ante un juez, quien ahora adelanta el procedimiento penal respectivo contra Fuentes.

---

[2] A la conversión de Mayo 26, 2017, esto equivale a US$917,369.87.

[3] La fiscalía luego dividió esta investigación en dos por lo cual se podría decir que hay cinco (y no cuatro) investigaciones. Aclaro, además, que aunque el número original de esta investigación fue 3085, la fiscalía luego le asignó un nuevo número de expediente a esta y a las otras investigaciones.

3

### B. Segundo Procedimiento Penal

14. El 14 de mayo de 2015, Omnilife presentó esta denuncia (adjunta aquí como **Exhibit C**) ante la fiscalía de Jalisco, explicando que, mientras se presentaba como administradora de Omnilife, Fuentes se vendió a sí misma dos obras de arte, propiedad de Omnilife, a precios muy descontados de su valor real y del valor que Omnilife pagó por ellas. Omnilife ha explicado que por esas dos obras de arte pagó $11,491,367.50 (pesos mexicanos) y que Fuentes se las vendió a sí misma por $905,172.42 (pesos mexicanos)— es decir, a menos del 8% de su valor—causando un perjuicio a Omnilife de por lo menos $10,586,195.08 (pesos mexicanos).[4]

15. A raíz de esta denuncia, el 18 de mayo de 2015, la fiscalía de Jalisco inició una investigación previa sobre esos hechos—la investigación previa No. 3086/2015—para luego determinar si Fuentes cometió algún delito.

16. Posteriormente, el fiscal a cargo de esta investigación la consignó ante un juez, es decir acusó formalmente a Fuentes ante un juez, quien ahora adelanta el procedimiento penal respectivo contra Fuentes.



### C. Primera Investigación Penal que aún no es Procedimiento Penal

17. El 14 de mayo de 2015, Omnilife presentó esta denuncia (adjunta aquí como **Exhibit D**) ante la fiscalía de Jalisco, explicando que, mientras se presentaba como administradora de Omnilife, Fuentes se vendió a sí misma 19 obras de arte, propiedad de Omnilife, a precios muy descontados de su valor real y del valor que Omnilife pagó por ellas. Omnilife ha explicado que por esas 19 obras de arte pagó $3,379,611.69 (pesos mexicanos) y que Fuentes se las vendió a sí misma por $286,900 (pesos mexicanos)—es decir, a menos del 9% de su valor—causando un perjuicio a Omnilife de por lo menos $3,092,711.69 (pesos mexicanos).[5]

---

[4] A la conversión de Mayo 26, 2017, esto equivale a US$571,816.08.

[5] A la conversión de Mayo 26, 2017, esto equivale a US$167,053.63.

4

18. A raíz de esta denuncia, el 18 de mayo de 2015, la fiscalía de Jalisco inició una investigación previa sobre esos hechos—la investigación previa No. 3087/2015—para luego determinar si Fuentes cometió algún delito.

19. Esta investigación sigue en curso. El fiscal a cargo de esta investigación aún no ha acusado formalmente a Fuentes ante un juez, por lo cual esta investigación aun no es un procedimiento penal.

### D. Segunda Investigación Penal que aún no es procedimiento penal

20. El 20 de mayo de 2015, Omnilife presentó esta denuncia (adjunta aquí como **Exhibit E**) ante la fiscalía de Jalisco, explicando que, mientras se presentaba como administradora de Omnilife, Fuentes se vendió a sí misma una obra de arte denominada AEREI 1984, propiedad de Omnilife, a precios muy descontados de su valor real y del valor que Omnilife pagó por ella. Omnilife ha explicado que por esa obra de arte pagó $272,259.00 (pesos mexicanos) y que Fuentes se la vendió a sí misma por $129,310.35 (pesos mexicanos)—es decir, a menos del 50% de su valor—causando un perjuicio a Omnilife de por lo menos $142,948.65 (pesos mexicanos).[6]



21. A raíz de esta denuncia, el 22 de mayo de 2015, la fiscalía de Jalisco inició una investigación previa sobre esos hechos—la investigación previa No. 3306/2015—para luego determinar si Fuentes cometió algún delito.

22. Posteriormente, Omnilife presentó un escrito formal ante el fiscal, explicándole que como parte de su investigación sobre la conducta de Fuentes, Omnilife había descubierto que Fuentes vendió las obras de arte propiedad de Omnilife a varias galerías alrededor del mundo, incluyendo las siguientes galerías ubicadas en Nueva York: Gagossian Gallery, Hauser & Wirth Gallery, y Spencer Brownstone Gallery.[7] En ese escrito, Omnilife también le explicó al fiscal que Fuentes había conducido algunas de esas transacciones a través de un bróker llamado David Cohen. Omnilife le pidió al fiscal que recopilara la información necesaria sobre estas galerías y este bróker en el curso de la investigación.

---

[6] A la conversión de Mayo 26, 2017, esto equivale a US$7,721.41.

[7] Anexo este escrito a esta Declaración como **Exhibit F**.

23. Esta investigación sigue en curso. El fiscal a cargo de esta investigación aún no ha acusado formalmente a Fuentes ante un juez, por lo cual esta investigación aun no es un procedimiento penal.

**II. Omnilife tiene derecho a presentar cualquier evidencia relevante, incluida la evidencia que obtenga en virtud de la Aplicación §1782, en los dos procedimientos penales y en las dos investigaciones**

24. Bajo la ley mexicana, Omnilife tiene el derecho de aportar en los dos procedimientos penales y en las dos investigaciones cualquier evidencia que obtenga a través de esta Aplicación y que sea relevante a esos procesos.[8] Los fiscales a cargo de esas investigaciones y los jueces a cargo de esos procedimientos *están obligados* a recibir y analizar la evidencia que presente Omnilife, y no tienen ninguna discreción para negar a Omnilife el derecho a que se le reciba su evidencia.[9]

25. Específicamente, el artículo 20 de la constitución mexicana faculta a Omnilife, y a toda víctima de un delito que lo denuncie, a "que se le reciban todos los datos o elementos de prueba con los que cuente, tanto en la investigación [previa] como en el proceso" penal que se dé tras la investigación previa.[10] La Corte Suprema de México, el Tribunal de mayor jerarquía en el país, ha establecido que las autoridades mexicanas están obligadas a respetar este derecho. Esto quiere decir que la fiscalía y los jueces están obligados a



---

[8] De hecho, cuando presentó sus cuatro denuncias, Omnilife se reservó el derecho de ampliarlas y de presentar cualquier evidencia adicional relacionada a los hechos denunciados. *Véase*, por ejemplo, Exhibit A (pág. 7) donde Omnilife se reserva el "derecho de ampliar la presente denuncia así como exhibir medios probatorios diversos."

[9] De hecho, cuando los fiscales abrieron las cuatro investigaciones, expresamente ordenaron que se practicaran todas las diligencias y se recibieran *todos los documentos* que fueran necesarios durante el curso de las investigaciones. *Véase, por ejemplo*, Exhibit B (pág. 2): "Abrase la Averiguación Previa respectiva [y] practíquense cuantas diligencias sean necesarias a fin de acreditar el cuerpo del delito y la probable responsabilidad criminal de quien resulte."

[10] Además, el mismo artículo da el derecho a Omnilife a "intervenir en el juicio e interponer los recursos en los términos que prevea la ley" y a que se le repare el daño causado con el delito.

recibir las pruebas que aporte el denunciante, en este caso Omnilife, y no tienen ninguna discreción al respecto.[11]

26. Similarmente, el artículo 115 del Código de Procedimientos Penales para el Estado de Jalisco (el Estado mexicano donde cursan las dos investigaciones y los dos procedimientos penales contra Fuentes) también da el derecho a Omnilife, y a toda víctima de un delito que lo denuncie, a "que se le reciban todos los datos o elementos de prueba con los que cuente, tanto en la averiguación previa como en el proceso, y a que se desahoguen las diligencias correspondientes."

27. Finalmente, aclaro que, en los procedimientos penales, Omnilife tiene derecho a que se le reparen sus perjuicios, y es bastante posible que Omnilife pida esa reparación.[12]

### III. Ni la fiscalía ni los jueces tienen forma de constreñir la producción de evidencia fuera de México

28. Bajo la ley mexicana, durante la investigación previa y durante el proceso penal, la fiscalía y jueces de Jalisco pueden citar a cualquier testigo (u ordenar la producción de cualquier documento) relevante para esclarecer los hechos investigados. La fiscalía y el juez pueden incluso constreñir a que el testigo se presente, o a que se exhiban los documentos, so pena de apremio. *Véase, por ejemplo*, Artículo 55 del Código de Procedimientos Penales para el Estado de Jalisco.

29. Estas facultades, sin embargo, son de naturaleza territorial, y están limitadas a México. La fiscalía y los jueces no pueden forzar directamente testimonios o pruebas documentales en el extranjero, y necesitan la ayuda de autoridades extranjeras para lograr que se produzca esta evidencia.



---

[11] *Véase, por ejemplo*, sentencia de la Corte Suprema de Justicia 1ª CXII/2011 de julio de 2011; véase también Sentencia de Amparo Directo 569/2002 del Noveno Tribunal Colegiado en Materia Penal del Primer Circuito.

[12] Según explique, el artículo 20 de la constitución mexicana da derecho a Omnilife a que se le repare el daño causado con el delito. *Véase* Constitución Mexicana, Artículo 20 (C) ("De los derechos de la víctima o del ofendido"), V ("Que se le repare el daño. En los casos en que sea procedente, el Ministerio Público estará obligado a solicitar la reparación del daño, sin menoscabo de que la víctima u ofendido lo pueda solicitar directamente, y el juzgador no podrá absolver al sentenciado de dicha reparación si ha emitido una sentencia condenatoria").

7

Declaro bajo pena de perjurio bajo las leyes de los Estados Unidos de América que lo anterior es cierto y correcto. Firmado Mayo 30, 2017.

Javier Coello Zuarth
Ciudad de México, México.

# Certificate of Accuracy

# CERTIFICATE OF ACCURACY

I, David Swiatlo, a professional translator with extensive experience and proven expertise as evidenced by my membership in the American Translators Association (ATA) and the recognized prestige attached to my work in the legal and business communities, do hereby certify that the translation into the English language of the Declaration of Javier Coello Zuarth and Exhibits A-F attached thereto dated May 30, 2017 in his capacity as counsel for Omnilife de Mexico S.A. de C.V. are true and accurate renderings of the Spanish language originals.

Dated: May 31, 2017

_____
David Swiatlo

State of New Mexico
County of Santa Fe

Sworn to and signed before me this 31st day of May, 2017

_____
Notary Public

OFFICIAL SEAL
LORETTA A. MAES
Notary Public
State of New Mexico
My Comm. Expires _____